UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Case No. 22-cr-184 (WMW)

UNITED STATES OF AMERICA,

Plaintiff,

v.

ABDIMAJID MOHAMUD ELMI,

Defendant.

**PLEA AGREEMENT AND SENTENCING STIPULATIONS**

The United States of America and Abdimajid Mohamud Elmi (hereinafter referred to as the "Defendant") agree to resolve this case on the terms and conditions that follow. This plea agreement binds only the Defendant and the United States Attorney's Office for the District of Minnesota. This agreement does not bind any other United States Attorney's Office or any other federal or state agency.

1. **Charges.** The Defendant agrees to plead guilty to Count 1 of the Information, which charges the Defendant with False Statement in violation of 18 U.S.C. § 1001. The United States agrees not to charge the Defendant with any other crimes associated with the conduct described herein, including wire fraud.

2. **Factual Basis.** The parties agree on the following factual basis as to Count 1 of the Information. The Defendant stipulates and agrees that were the matter to go to trial, the United States would prove the following facts beyond a reasonable doubt.

   a. At all relevant times, the Defendant lived in the State and District of Minnesota and was an independent contractor for a trucking company.



b. At all relevant times, the FBI had jurisdiction over the investigation of misuse and fraudulent procurement of Economic Injury Disaster Loans (EIDL).

c. On or about July 7, 2020, the Defendant applied for an EIDL from the Small Business Administration (SBA) related to the COVID-19 pandemic. EIDLs are loans with generous interest rates and payback periods meant to assist existing small businesses recover from disasters. EIDLs must be spent on business expenses and are not for personal use. The Defendant promised in the loan agreement that he would use the money as required.

d. The Defendant was approved for $150,000 and received the deposit (for $149,900) in his Wells Fargo checking account on July 9, 2020. His account was overdrawn by $987 at the time of the deposit. From July 10 through July 12, the Defendant spent a total of about $54,852 at Horseshoe Casino in Council Bluffs, Iowa. He then moved on to Hollywood Casino outside of Columbus, Ohio, where he spent another $19,988 on July 15. On July 16 through 20, the Defendant spent about $55,000 at Mystic Lake Casino. On July 20, 2020, the Defendant's account balance was overdrawn by $802.

e. On or about April 24, 2021, the Defendant requested another $100,000 loan from the SBA, called a "modification" to his existing loan. The SBA approved his request.

f. On May 4, 2021, two agents from the FBI interviewed the Defendant about his $150,000 EIDL loan he received in 2020. The Defendant claimed he spent the "majority" of the loan on his business and admitted he knew it was to be used for business expenses. When questioned about his bank records and the gambling they showed, the Defendant said that his Comdata records (the accounting system used at his trucking company to settle expenses and payments) would show him using the money legitimately.

g. The Defendant did not spend the majority of the loan on his business, rather he spent essentially all of the EIDL money on gambling. The Defendant's Comdata records did not show him using any of the EIDL money on his trucking business. The Defendant knew his statements to the contrary on May 4, 2020, were false and he knowingly and intentionally made these false statements to try to convince the FBI he had not done anything wrong.

h.  The Defendant admits that his false statements regarding how he spent the EIDL money and what his Comdata records would show were material because they were capable of influencing the FBI in its investigation of the Defendant.

*Other relevant conduct and additional facts:*

i.  In April 2021, the Defendant also applied for a Payment Protection Program (PPP) loan, another avenue through which the government offered COVID economic relief. This was granted and in May 2021 the Defendant received $20,833. The Defendant spent the majority of this PPP money on gambling.

j.  On July 15, 2021, the SBA and the Defendant signed the agreement for the $100,000 modification the Defendant had requested in April. Again, the Defendant promised he would use the money for authorized business expenses. On July 20, 2021, the SBA wired the Defendant $100,000 to his Wells Fargo account. As soon as the money was deposited, the Defendant began spending it on gambling again. The same day, July 20, 2021, he withdrew more than $38,000 from ATM, branch withdrawals, and card purchases at Canterbury Downs racetrack and the adjacent Wells Fargo. The next day, the Defendant spent another $30,000 at Canterbury Downs. On July 22, 2021, he made another $21,000 in purchases at Canterbury Downs, drawing his account balance down to $5.33. The Defendant had over-drafted his account by $657 by spending most of the money at Canterbury Downs.

k.  On July 28, 2021, the Defendant requested another loan modification, this one seeking another $150,000. The SBA initially accepted this second modification, but eventually learned of the FBI investigation and put a fraud alert on the Defendant's account before it was funded.

l.  The Defendant's Comdata records show that he never put anything into his business expenses through that system. Indeed, at the time he received the loans, the system lacked the ability for a contractor to put money onto their Comdata card or into their account.

3.  **Waiver of Indictment.** The Defendant agrees to waive indictment by a grand jury on this charge and to consent to the filing of a criminal information. The

Defendant further agrees to execute a written waiver of the right to be indicted by a grand jury on this offense.

4. **Waiver of Pretrial Motions**. The Defendant understands and agrees that he has certain rights to file pre-trial motions in this case. As part of this Agreement, and based upon the concessions of the United States, the Defendant knowingly, willingly, and voluntarily gives up the right to file pre-trial motions.

5. **Waiver of Constitutional Trial Rights.** The Defendant understands that he has the right to plead not guilty and go to trial. At trial, the Defendant would be presumed innocent, have the right to a jury trial or, in certain circumstances, to trial by the Court, the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, the right to subpoena witnesses to testify for the defense, the right to testify and present evidence, and the right to be protected from compelled self-incrimination. By pleading guilty, the Defendant knowingly, willingly, and voluntarily waives each of these rights, except the right to counsel. The Defendant understands that by pleading guilty, he is admitting his guilt, and, if the Court accepts the guilty plea, he will be adjudged guilty without a trial.

6. **Collateral Consequences.** The Defendant understands that because of this conviction, he could be assessed the costs of prosecution and experience additional consequences, such as the loss of the right to possess firearms, the right to vote, the right to hold public office, and the eligibility for federal benefits.

7. **Statutory Penalties**. The parties agree that Count 1 of the Information carries statutory penalties of:

    a. a maximum term of five years in prison;

    b. a supervised release term of one to three years;

    c. a criminal fine of up to $250,000;

    d. a mandatory special assessment of $100.00; and,

    e. restitution to the victims of the Defendant's crime.

8. **Revocation of Supervised Release**. The defendant understands that if he were to violate any supervised release condition while on supervised release, the Court could revoke the defendant's supervised release, and he could be sentenced to an additional term of imprisonment up to the statutory maximum set forth in 18 U.S.C. § 3583(e)(3). *See* U.S.S.G. §§ 7B1.4, 7B1.5. The defendant also understands that as part of any revocation, the Court may include a requirement that he be placed on an additional term of supervised release after imprisonment, as set forth in 18 U.S.C. § 3583(h).

9. **Guideline Calculations**. The parties acknowledge that the Defendant will be sentenced in accordance with 18 U.S.C. § 3551, *et seq*. Nothing in this plea agreement should be construed to limit the parties from presenting any and all relevant evidence to the Court at sentencing. The parties also acknowledge that the Court will consider the United States Sentencing Guidelines in determining the appropriate sentence and stipulate to the following guideline calculations:

a. **Base Offense Level:** The parties agree that the base offense level for False Statement is **6**. U.S.S.G. § 2B1.1(a)(2).

b. **Specific Offense Characteristics:**

   i. The parties agree that the offense level should be increased by an additional **12** levels because the loss amount is over $250,000. U.S.S.G. § 2B1.1(b)(1)(G).

   ii. The parties agree that no other specific offense characteristics apply.

c. **Chapter Three Adjustments:**

   i. Acceptance of Responsibility: The parties agree that if the Defendant (1) provides full, complete, and truthful disclosures to the United States Probation Office, including financial information; (2) testifies truthfully during the change of plea and sentencing hearings; (3) complies with this agreement; and (4) undertakes no act inconsistent with acceptance of responsibility before the time of sentencing, they will recommend that the Defendant receive a **three-level reduction** for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and (b).

   ii. The parties agree that no other Chapter 3 adjustments apply.

**The Defendant's total adjusted offense level is 15 (6 + 12 - 3 = 15).**

d. **Criminal History Category.** Based on information available at this time, the parties believe that the Defendant's criminal history category is **I**. U.S.S.G. §§ 4A1.1 and 4A1.2. This does not constitute a stipulation, but a belief based on an assessment of the information currently known. The Defendant's actual criminal history and related status (which might impact the advisory range of imprisonment) will be determined by the Court based on the information presented in the Presentence Report and by the parties at the time of sentencing. If it is determined that Defendant's criminal history is greater than I that will <u>not</u> be a basis to withdraw from this plea agreement.

e. **Advisory Guideline Range.** If the adjusted offense level is **15**, and the criminal history category is **I**, then the advisory Guidelines range is 18-24 months of imprisonment. U.S.S.G., Chapter Five, Part A.

6

  f. **Fine Range.** If the adjusted offense level is **15**, the fine range is $7,500 to $75,000. U.S.S.G. § 5E1.2(c)(3).

  g. **Supervised Release.** The Sentencing Guidelines require a term of supervised release of at least one year and up to three years. U.S.S.G. §§ 5D1.2(b)(2) and 5D1.2(c); 18 U.S.C. § 3583(k).

  h. **Sentencing Recommendation and Departures**. The parties reserve the right to make a motion for departures from the applicable Guidelines range and to oppose any such motion made by the opposing party. The parties reserve the right to argue for a sentence outside the applicable Guidelines range.

 **10.**   **Discretion of the Court**. The foregoing stipulations are binding on the parties, but do not bind the Court. The parties understand that the Sentencing Guidelines are advisory and their application is a matter that falls solely within the Court's discretion. The Court may make its own determination regarding the applicable Guidelines factors and the applicable criminal history category. The Court may also depart from the applicable Guidelines range. If the Court determines that the applicable guideline calculations or the Defendant's criminal history category are different from that stated above, the parties may not withdraw from this agreement, and the Defendant will be sentenced pursuant to the Court's determinations.

 **11.**   **Special Assessment**. The Guidelines require payment of a special assessment in the amount of $100.00 for each felony count of which the Defendant is convicted. U.S.S.G. § 5E1.3. The Defendant agrees to pay the $100.00 special assessment at the time of sentencing.

12. **Restitution**. The parties agree that the Court shall order the Defendant to pay restitution to the victims of his crime. *See* 18 U.S.C. § 3663A. The Defendant further agrees and commits pursuant to 18 U.S.C. § 3663A(a)(3) to pay the amount of restitution ordered by the Court.

The parties agree that the Defendant owes at least $278,833 in restitution consisting of the $20,833 to Benworth Capital (the PPP lender) and $250,000 to the Small Business Administration. Interest on one or both amounts may apply.

The Defendant represents that he will fully and completely disclose to the United States Attorney's Office the existence and location of any assets in which the Defendant has any right, title, or interest. The Defendant agrees to assist the United States in identifying, locating, returning, and transferring assets for use in payment of restitution and fines ordered by the Court.

Within 14 days of entering his plea, the Defendant further agrees that he will provide the United States, under penalty of perjury, a financial disclosure form listing all the Defendant's assets and financial interests valued at more than $1,000. Defendant agrees to provide updates with any material changes in circumstances, as described in 18 U.S.C. § 3664(k), which occur prior to sentencing, within seven days of the event giving rise to the changed circumstance. The Defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report on him to evaluate the Defendant's ability to satisfy any financial obligation imposed by the Court.

13. **Waivers of Appeal and Collateral Attack.** The Defendant hereby waives the right to appeal any non-jurisdictional issues. This appeal waiver includes,

but is not limited to, the Defendant's waiver of the right to appeal guilt or innocence, sentence and restitution, and the constitutionality of the statute to which the Defendant is pleading guilty. The parties agree, however, that excluded from this waiver is an appeal by the Defendant of the substantive reasonableness of a term of imprisonment above 24 months. The Defendant also waives the right to petition under 28 U.S.C. § 2255, except based upon a claim of ineffective assistance of counsel. The Defendant has discussed these rights with the Defendant's attorney. The Defendant understands the rights being waived, and the Defendant waives these rights knowingly, intelligently, and voluntarily.

The United States agrees to waive its right to appeal any sentence, except that the government may appeal the substantive reasonableness of a sentence consisting of less than 18 months' imprisonment.

14. **FOIA Waiver.** In exchange for concessions made by the United States, the Defendant hereby waives all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act (FOIA) (5 U.S.C. § 552) and the Privacy Act of 1974 (5 U.S.C. § 552A).

15. **Complete Agreement.** This Agreement, along with any agreement signed by the parties before entry of a plea, is the entire agreement and understanding between the United States and the Defendant.

Date: October 12, 2022

ANDREW M. LUGER
United States Attorney

BY:   ____s/Sarah Hudleston_____
SARAH E. HUDLESTON
Assistant United States Attorney

Date: October 28, 2022

ABDIMAJID M. ELMI
Defendant

Date: October 28, 2022

RYAN GARRY
Counsel for Defendant

10